UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ASHLEY A. PETRASH and PHILLIP
J. PETRASH,

          Plaintiffs,                Case No. 1:23-cv-10133

v.                                      Honorable Thomas L. Ludington

THE COLUMBUS MUTUAL LIFE        United States District Judge
INSURANCE COMPANY,

          Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' COMPLAINT**

For over 36 years, Nancy Petrash maintained a life-insurance policy with Defendant Columbus Mutual Life Insurance Company. In September 2021, Nancy—who by then suffered from several health conditions—missed a premium payment, and her Policy entered a 61-day grace period during which she could make the required premium payment, or her Policy would terminate. But Nancy did not pay her premium during the grace period, and her Policy accordingly terminated on November 28, 2021. Unfortunately, Nancy died less than 24 hours later.

After Nancy's death, two of her children—Plaintiffs Ashley and Phillip Petrash—attempted to collect Nancy's life-insurance benefit from Defendant. But Defendant refused to pay, arguing Nancy's policy expired less than 24 hours before her death. Plaintiffs then sued Defendant, seeking a declaratory judgment that Nancy's life-insurance policy was in effect at the time her death. Defendant now seeks summary judgment, arguing that all of Plaintiffs' claims must be dismissed because there is no dispute that Nancy's life-insurance policy expired before she died.

**I.**

In December 1984, Defendant Columbus Mutual Life Insurance Company issued a life-insurance policy ("the Policy") to Nancy L. Petrash with a death benefit of $150,000.00. *See generally* ECF No. 7-2. The Policy was a "Flexible Premium Adjustable Life Policy," ECF No. 7-2 at PageID.69, a type of insurance policy that "allows the [insured] to vary the amount and/or timing of premium payments," by deducting a specified monthly amount from the total value[1] of the insured's policy. INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION, INDIVIDUAL FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY STANDARDS, IIPRC-L-09-I (Dec. 5, 2016). The insured may continue varying their premium payments until the value of their policy is insufficient to cover a monthly deduction. *Id.* When the insured's policy value falls below this threshold, their policy enters a 61-day grace period, during which time the insured must make a premium payment to cover at least the monthly deduction, otherwise the policy terminates after 61 days. *Id.*; *see also* ECF No. 7-2 at PageID.79.

For over 30 years, Nancy made occasional premium payments, so her Policy value was sufficient to cover the necessary monthly deductions for continued coverage. *See* ECF No. 10 at PageID.101. On November 28, 2020, Nancy made a premium payment of $1,500.00. *See* ECF No. 7-3 at PageID.89. After this payment, Nancy's Policy value was sufficient to cover monthly deductions through August 2021. *Id.* But by late September 2021, Nancy's account value was only $73.95. *Id.* So when Defendant attempted to deduct the monthly $137.02 from Nancy's account value on September 28, 2021, there were insufficient funds in Nancy's account. *Id.*

---

[1] The total value—or "cash value"—of the Nancy's Policy was determined according to a formula detailed in the Policy Contract. *See* ECF No. 7-2 at PageID.80 (explaining how "cash value" is determined). In 1984, the Policy Contract projected the annual cash value of Nancy's account after 20 years would be $1,131.09, assuming "all planned premium" payments were made and there were no riders. *See id.* at PageID.70.

On October 28, 2021, Defendant sent Nancy a notice[2] that, if no payment was received by November 28, 2021, her "[P]olicy [would] terminate without value" and her "insurance coverage [would] end." ECF No. 7-4 at PageID.93. But Nancy never paid, and her Policy expired on November 28, 2021. *See* ECF No. 7-2 at PageID.78 (noting coverage terminates when "the grace period ends").

On November 29, 2021, Nancy died, just one day after her Policy terminated. ECF No. 10 at PageID.113. Plaintiffs, two of Nancy's adult children, filed a claim for the proceeds of her life-insurance policy.[3] *See* ECF No. 7 at PageID.59. Defendant denied the claim "because the [P]olicy had terminated due to nonpayment of the premium," thus the Policy "was no longer in force at the time of [Nancy's] death." ECF No. 7 at PageID.59.

Accordingly, Plaintiffs filed a Complaint in the Isabella County Circuit Court. ECF No. 1-2. Plaintiff's Complaint alleges Defendant breached the policy contract and acted in bad faith, and seeks a declaratory judgment that the Policy was in effect at the time of Nancy's death and that Defendant must pay "the amount of the [P]olicy" to Plaintiffs. ECF No. 1-2 at PageID.13.

On September 15, 2023, Defendant filed a motion for summary judgment arguing there is no genuine issue of material fact that Nancy's Policy expired the day before she passed away, thus Plaintiffs have no claim for relief. *See generally* ECF No. 7 at PageID.60–63. Plaintiffs respond

---

[2] The notice was sent to Nancy's home address, but Plaintiffs note that "in the months preceding her death she was incapacitated, and in the weeks prior to her death [she was] hospitalized at McLaren Central Michigan[.]" ECF No. 10 at PageID.101. Even assuming Nancy was hospitalized when Defendant mailed the notice to her on October 28, 2021, all Michigan law requires is that the insurer sends written notice "to the policyowner's *last known address* at least 30 days prior to termination of [life-insurance] coverage." MICH. COMP. LAWS 500.4012(b) (emphasis added); *see also Becker Metal Works, Inc. v. Genworth Life & Annuity Ins. Co.*, No. 23-11264, 2023 WL 8455033, at *3 (E.D. Mich. Dec. 6, 2023) (detailing notice requirements under Michigan law).

[3] Notably, the beneficiary of the Policy in 2021 was "The Nancy Lea de Cordova Trust dated October 15, 2020," and Plaintiffs are "co-successor trustees" of the Trust. ECF No. 10 at PageID.100.

with three arguments for why, in their view, there is a genuine issue of fact regarding whether Nancy's Policy was in effect at the time of her death. by with three reasons why, in their view, there is a genuine issue of fact as to whether Nancy's Policy was in effect at the time of her death. *See* ECF No. 10 at PageID.100–11).

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of "identifying" the record evidence "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Throughout its analysis, the court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact on the elements of its case that the moving party has challenged. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

### III.

In opposition to Defendant's Motion for Summary Judgment, ECF No. 7, Plaintiffs offer up three arguments for why they believe the Policy did *not* expire on November 28, 2021, *see* ECF No. 10. But each argument ignores undisputed facts which, when considered, lead to the same conclusion: Under the Policy's terms, Nancy's policy expired on November 28, 2021.

First, Plaintiffs argue that the grace period was "extended" because Defendant "retained the insured's $73.95 account balance" that was insufficient to cover the September 2021 monthly payment. ECF No. 10 at PageID.100. But this argument is incompatible with the Policy's unambiguous terms which provide that "[i]f the cash value, less any debt, on a monthly anniversary day is not enough to meet the monthly deduction for the month following such monthly anniversary day, a grace period of 61 days shall be allowed for *the payment of a premium sufficient to cover the monthly deduction*." ECF No. 7-2 at PageID.79 (emphasis added). In other words, the terms of the Policy *required* the cash value of the policy to cover the *entire monthly deduction* to avoid entering a grace period. And there is no dispute that the cash value of Nancy's account in September 2021—$73.95—did *not* cover the *entirety* of that month's $137.02 deduction. Thus, the grace period began, according to the terms of the Policy, regardless of whether Defendant retained the $73.95.

Second, Plaintiffs argue that two provisions of the Policy "irreconcilably conflict" such that it renders the Policy ambiguous. ECF No. 10 at PageID.108. Specifically, Plaintiffs argue that the *Planned Premiums* provision—which required that any premium payment be not less than $50—"clearly contradicts" the *Grace Period* provision—which required a payment sufficient to cover the monthly deduction. *Id.* at PageID.109; *see also* ECF No. 7-2 at PageID.79. According to Plaintiffs, the result is that, under the *Grace Period* provision, the insured *could* be required to pay

a premium *less than* $50, which is the required minimum premium payment under the *Planned Premiums* provision. ECF No. 10 at PageID.109. But that was not the case here and, as Defendant points out, the terms of the Policy permitted the insured—in this case, Nancy—to make *premium payments* of at least $50.00 at any time, but *also required* the policy value to cover the cost of of *monthly deductions*. ECF No. 11 at PageID.142; *see also* ECF No. 7-2 at PageID.78–79. And if the policy value was insufficient to cover the cost of monthly deductions, the *Reinstatement* provision required "payment of a minimum premium sufficient to keep the policy in effect for two months." *Id.* at PageID.79. In sum, the Grace Period and Reinstatement provisions applied when the cash value of the account was *insufficient* to cover a monthly deduction, and they are not incompatible with the *Planned* Premiums provision, which contemplated premium payments made when a policy's cash value was *sufficient* to cover monthly deductions.

Finally, Plaintiff argues that Defendant's COVID-19 policy extended the grace period to 90 days, thus Nancy had a 90-day grace period, *not* 61 days. ECF No. 10 at PageID.110. But Defendant's COVID-19 policy applied only to policy holders "in grace status between April and June, 2020." ECF No. 10 at PageID.134. And it is undisputed that Nancy's Policy was not in grace status until over one year later, in September 2021. *See* ECF No. 10 at PageID.101 (noting Nancy made regular payments and maintained the Policy for 36 years).

In sum, the underlying facts and terms of Nancy's Policy are clear and may not be disputed: Nancy's life-insurance Policy terminated on November 28, 2021 and was not in effect at the time of her death on November 29, 2021. So Plaintiffs are not entitled to receive any benefit of the policy. Accordingly, Defendant's Motion for Summary Judgment, ECF No. 7, will be granted, and Plaintiffs' Complaint, ECF No. 1-2, will be dismissed with prejudice.

- 7 -

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 7, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1-2, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

Dated: June 10, 2024                                             s/Thomas L. Ludington
                                                                 THOMAS L. LUDINGTON
                                                                 United States District Judge